STATE OF NORTH CAROLINA v. RICHARD POWELL WALKER

No. 7626SC295

(Filed 20 October 1976)

1. **Homicide § 21— involuntary manslaughter — sufficiency of evidence**
   The State's evidence was sufficient to support a verdict finding defendant guilty of involuntary manslaughter where it would support a finding that the killing resulted from an unlawful assault by defendant upon the occupants of a truck or from defendant's culpable negligence in approaching the truck with a loaded pistol, his finger on the trigger, and demanding that the occupants leave the truck.

2. **Homicide § 28— defense of accident or misadventure — instructions sufficient**
   In a homicide prosecution where defendant contended that the shooting in question was accidental, the trial court's instruction on the defense of accident or misadventure which defined it as being characterized by a lack of wrongful purpose or criminal negligence on defendant's part and explained its exculpatory effect was proper.

3. **Criminal Law § 138; Homicide § 31— involuntary manslaughter — sentence recommending work release — challenge premature**
   Where the trial court, upon defendant's conviction for involuntary manslaughter, imposed a sentence of imprisonment for 7 years with a recommendation that at the end of 2 years defendant, if qualified, be placed on work release for the remainder of the 7 year period, and provided that restitution in a named sum be made to the minor children of the homicide victim out of defendant's work release earnings, defendant's contention that such punishment exceeded the limits of G.S. 14-18 was prematurely raised on appeal, since (1) the court's provisions were not binding on the Parole Commission, the body with which all releasing authority for work release privileges rests, (2) defendant would become eligible for parole before the expiration of the 2 year period set by the trial court, and (3) defendant might not even be granted the privilege of participating in the work release program.

APPEAL by defendant from *Baley, Judge.* Judgment entered 10 December 1975 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 24 August 1976.

Defendant was charged in an indictment with the offense of first degree murder.

The State offered evidence tending to show that on the night of 26 May 1974 the manager of the Tastee-Freez in Cornelius heard a shot while working and shortly thereafter saw defendant walking around the Tastee-Freez to the rear of the parking lot; that another Tastee-Freez patron drove up and

saw defendant standing by the driver's side of a dark blue pickup truck; that a lady sitting on the passenger side, later identified as defendant's wife, opened her door and the patron saw a blonde man lying across the seat with his head in her lap; that defendant then walked past the patron's car to the rear of the lot, got in another car and drove off; that the pickup truck then left the Tastee-Freez; that defendant's wife drove the truck ¼ of a mile to the Bantam Chef where a policeman called an ambulance; that the blonde man, Stuart Winkler, had been shot in the left chest with a .38 caliber pistol and died as a result thereof; that the police subsequently received a call and found defendant at a friend's house with a .38 caliber pistol lying on the table in front of him; that the pistol had been recently fired and the bullet found in Winkler's body had come from defendant's gun.

Defendant testified that he and his wife were separated; that he did not know Winkler but knew his wife was going with him; that after the separation his wife kept his blue pickup truck, which was registered in her name for insurance purposes only, and he wanted it back; that he saw the truck at the Tastee-Freez and approached it with his pistol loaded because he knew his wife carried a pistol; that he opened the door on the driver's side and asked Winkler and his wife to get out of the truck; that Winkler grabbed the gun and it went off accidentally; that defendant never intended to hurt anyone with the gun but only intended to protect himself; and that he then drove to a friend's house, told her what happened and gave her permission to call the police.

The jury returned a verdict of guilty of involuntary manslaughter. The court imposed a prison sentence of seven years with conditions from which the defendant appealed.

*Attorney General Edmisten, by Associate Attorney Jo Anne Sanford Routh, for the State.*

*Wardlow, Knox & Knox, by H. Edward Knox and William G. Robinson, for defendant.*

MARTIN, Judge.

[1] Defendant contends the court erred in denying his motion for nonsuit at the close of State's evidence and again at the close

of all evidence because there was no showing of an unlawful act or criminal negligence by defendant.

It is well settled in this State that upon a motion for a nonsuit in a criminal case

" . . . the trial judge is required to take the evidence for the State as true, to give to the State the benefit of every reasonable inference to be drawn therefrom and to resolve in the favor of the State all conflicts, if any, therein. (Citations omitted.)" *State v. Edwards,* 286 N.C. 140, 145, 209 S.E. 2d 789, 792 (1974).

The State's evidence taken in this light would support a finding that the killing resulted from an unlawful assault by defendant upon the occupants of the truck or from defendant's culpable negligence in approaching the truck with a loaded pistol, his finger on the trigger, and demanding that the occupants leave the truck. This evidence, taken as true, supports a conclusion that the denial of defendant's motions for a nonsuit was proper and that defendant's assignment of error is without merit.

[2] The defendant next contends the court erred in failing to charge the jury as to the substance and legal effect of defendant's contention that the shooting was accidental. By this assignment he challenges the sufficiency of the court's instruction regarding the defense of accident and misadventure.

Subsequent to the court's instructions as to the elements of the varying degrees of homicide for which defendant could have been found guilty, the court instructed on the defense of accident or misadventure:

"If Stuart Wayne Winkler died by accident or misadventure, that is, without wrongful purpose or criminal negligence on the part of the defendant, the defendant would not be guilty.

" . . .

"The burden of proving an accident is not on the defendant. His assertion of an accident is merely a denial he committed any crime. The burden remains on the State to prove the defendant's guilt beyond a reasonable doubt."

It was made clear that unless the jury found from the evidence and beyond a reasonable doubt that defendant's killing of Stuart Wayne Winkler resulted from an unlawful or criminally negligent act by the defendant, that it could not convict him of involuntary manslaughter. Defendant now suggests instructions should have been to the effect that if defendant was doing a lawful act in approaching the truck, and if he was not committing an assault, then the incident should be characterized as an accident or misadventure. The trial court's instructions were to this very effect. The jury was required to find that defendant committed either an unlawful act or a culpably negligent act before it could convict him of involuntary manslaughter. The court charged as follows:

> "For you to find the defendant guilty of involuntary manslaughter, the State must prove two things beyond a reasonable doubt; first, that the defendant acted unlawfully or in a criminally negligent way."

Defendant's contention of accident or misadventure is an important feature of his case. The trial court squarely addressed that contention when it charged on the defense, defined it as being characterized by a lack of wrongful purpose or criminal negligence on defendant's part, and explained its exculpatory effect. It is established in this jurisdiction that where the judge's charge fully instructs the jury on all substantive features of the case, defines and applies the law thereto, and states the contentions of the party as the trial court did here, it complies with G.S. 1-180, " . . . and a party desiring further elaboration on a particular point, or of his contentions . . . must aptly tender request for special instructions. (Citation omitted.)" *State v. Garrett*, 5 N.C. App. 367, 372, 168 S.E. 2d 479, 482 (1969). If defendant had desired further elaboration on this contention, or a variation in the phrasing thereof, he should have tendered such request either prior to the charge or at the close thereof when the court specifically asked counsel whether anything further was desired.

The defendant's second assgnment of error is therefore overruled.

Defendant's third assignment of error is overruled.

[3] By defendant's fourth assignment of error he contends the court erred in the judgment and commitment entered. More

State v. Walker

specifically, the defendant assigns error to the following empha-
sized portion of the commitment:

> "It is adjudged that the defendant be imprisoned for the
> term of seven (7) years in the State Department of Cor-
> rections. At the expiration of the service of two (2) years
> of this sentence, it is the recommendation of the Court, if
> at that time he be considered qualified, that he be placed
> on work release for the remainder of the seven year period,
> WITH THE PROVISION THAT HE PAY FROM THE FUNDS SECURED
> BY WORK RELEASE, THE SUM OF TWO HUNDRED FIFTY
> ($250.00) DOLLARS A MONTH FOR A PERIOD OF FIVE (5)
> YEARS, WHICH SUM IS TO BE PAID INTO THE OFFICE OF THE
> CLERK OF SUPERIOR COURT, AND TO BE HELD IN TRUST FOR
> THE TWO MINOR CHILDREN OF THE DECEDENT, STUART WAYNE
> WINKLER, TO BE USED FOR THEIR USE AND BENEFIT."

Defendant's brief presents the argument that G.S. 14-18, which
governs the matter of punishment for involuntary manslaugh-
ter, provides only for fine or imprisonment, or both, in the
discretion of the court, and that the trial court's sentence herein
exceeds the limits of the statute by recommending payment of
restitution out of defendant's work-release earnings.

This question contemplates the occurrence of events in the
future which are too speculative for this Court to consider at
the present time. First of all, the defendant may not even be
granted the privilege of participating in the work-release pro-
gram. Secondly, he may be paroled prior to the point at which
the trial court's recommendation as to work-release would be
effective.

The actual commitment of the defendant to the Department
of Corrections was for a period of seven years. In sentences of
greater than five years duration, a trial court is not at liberty
to impose a mandatory assignment to the work-release pro-
gram. See G.S. 148-33.1. Moreover, G.S. 148-33.1(b) read in
conjunction with G.S. 143B-266(b) makes it clear that all re-
leasing authority for work-release privileges for any inmate
serving a term of greater than five years rests ultimately in
the Parole Commission. Therefore, the trial court's recommen-
dation that the defendant be placed on work-release is not bind-
ing thereon. Therefore, this "recommendation" by the trial court
does not require defendant to go on work-release at all, and it is

clear that if he does not go on the program he would not pay any restitution out of "work-release earnings."

. Therefore, it would appear that the trial court below has merely set forth for the Parole Commission's consideration the conditions upon which it would recommend work-release. Defendant has not yet been "injured" by this recommendation and it is speculative to assert that he ever will be, since, in addition to the factors set forth above, G.S. 148-58 provides that a prisoner is eligible to have his case considered for parole after service of one-fourth of his sentence. Defendant will thus be eligible for consideration for parole in twenty-one months, or three months prior to the time at which the court's recommendation regarding work-release would be effective. For the foregoing reasons, a consideration of the question presented by defendant's argument is premature at this point.

Defendant's fourth assignment of error is therefore overruled.

In the trial we find no prejudicial error.

No error.

Judges BRITT and HEDRICK concur.